UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | C.R. No. 97-cr-33-JJM-LDA |
| | ) | |
| PATRICK M. VIGNEAU, | ) | |
| Defendant. | ) | |
| | ) | |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge.

The central questions posed by Patrick M. Vigneau's Motion for Compassionate Release are whether the Court can find extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i) to grant release and whether such reasons exist for Mr. Vigneau. The simple answers are, "Yes it can," and, in this particular instance, "Yes they do."

I.    BACKGROUND

In 1998, a jury found Mr. Vigneau guilty of engaging in a continuing criminal enterprise ("CCE"), in violation of 21 U.S.C. § 848; possessing marijuana with the intent to distribute, in violation of 21 U.S.C. § 841; attempting to possess with intent to distribute, in violation of 21 U.S.C. § 846; conspiring to distribute marijuana, in violation of 21 U.S.C. §§ 846 and 846(a)(1); and conspiring to commit money laundering, in violation of 18 U.S.C. §§ 1956(h) and 1956(a)(1)(A)(i). *United States v. Vigneau*, 337 F.3d 62, 66 (1st Cir. 2003). The Court calculated his Sentencing

Guidelines as a Combined Base Offense Level of 38[1], and a Criminal History Category III creating a Guidelines range of 292 to 365 months, with a twenty-year mandatory minimum for the CCE conviction. ECF No. 328-1 at 10, 16, 20. The Court sentenced him to 365 months of incarceration (over thirty years) to be followed by five years of supervised release. ECF No. 315-1 at 1.

Mr. Vigneau has served over twenty-three years of the sentence.[2] Now, at age 55, he seeks release under 18 U.S.C. § 3582(c)(1)(A)(i). Citing as extraordinary and compelling reasons justifying his release, Mr. Vigneau argues his CCE conviction is "unusual and unique" in this District, his sentence length was overly long "for conduct [marijuana use and distribution] that happens every day in the United States today," and he is at an increased health risk because of an outbreak of COVID-19 where he is incarcerated. See ECF No. 321 at 7, 9-11.

Mr. Vigneau's Motion for Compassionate Release[3] raises two threshold questions: (i) whether the Court may independently evaluate extraordinary and

---

[1] Mr. Vigneau received no reduction for acceptance of responsibility because he exercised his constitutional right to a jury trial.

[2] With good-time credit, the Bureau of Prisons calculates his release date as June 27, 2023.

[3] Mr. Vigneau filed a pro se Motion to Modify the Term of Imprisonment Pursuant to 18 U.S.C. § 3582 (c)(1)(A) in April 2019. ECF No. 315. The Court denied it without prejudice because Mr. Vigneau had not exhausted all his administrative remedies. ECF No. 317. Mr. Vigneau in February 2020 filed a pro se Renewed Motion to Modify. ECF No. 318. The Court appointed the Federal Public Defenders to represent Mr. Vigneau in his motion seeking compassionate release. Mr. Vigneau, through his attorney, in April 2020, filed a Supplemental Motion for Retroactive Application of Sentencing Guidelines under 18 U.S.C. § 3582 (c)(1)(A)(i). ECF No. 321. Mr. Vigneau also filed pro se a supplemental motion. ECF No. 323. The government has filed responses. ECF Nos. 319, 325, 327, and 329. Mr. Vigneau through his attorney filed a reply. ECF No. 330.

compelling reasons and (ii) whether those reasons exist in his case.  The Court answers each question in turn.

II.    ANALYSIS OF COMPASSION RELEASE STATUTE

Courts are generally prohibited from modifying a term of imprisonment after it has been imposed.  Limited exceptions, however, exist, including the compassionate release statute, 18 U.S.C. § 3582.  Under this statute, a court may reduce a sentence upon motion by the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).  "[A]fter considering the factors set forth in section 3553(a), to the extent that they are applicable," a court may then reduce a sentence "if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

"The statute does [not] define—or place any limits on—what 'extraordinary and compelling reasons' might warrant such a reduction."  *United States v. Cantu*, 423 F. Supp. 3d 345, 352 (S.D. Tex. 2019) (quoting *Crowe v. United States*, 430 F. App'x 484, 485 (6th Cir. 2011)).  Congress instead directed the Sentencing Commission to set forth guidance on the meaning of "extraordinary and compelling" through policy statements. 28 U.S.C. § 994(t).

> The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title

18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

*Id.*

In 2006, the Sentencing Commission issued a policy statement with Application Notes that reiterates, without further definition, that reductions of sentences are authorized for extraordinary and compelling reasons. U.S.S.G. § 1B1.13.[4] The Application Notes to § 1B1.13, however, offer further guidance. They set forth four circumstances in which there might exist extraordinary and compelling reasons to grant a request for compassionate release: (A) medical condition of the defendant; (B) age of the defendant; (C) family circumstances; and (D) "as determined by the Director of the Bureau of Prisons, there exists in the defendant's case an

---

[4] § 1B1.13.   Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement)

Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

    (1)

        (A) extraordinary and compelling reasons warrant the reduction; or

        (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

    (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

    (3)    the reduction is consistent with this policy statement.

extraordinary and compelling reason *other than, or in combination with*, the reasons described in subdivisions (A) through (C)."  U.S.S.G. § 1B1.13 cmt. n.1(A)-(D) (emphasis added).  Often called the "catch-all provision," Section D of the Application Notes, as written, grants the Director of the Bureau of Prisons the right to order a sentence reduction for any extraordinary and compelling reason(s), even for reasons other than medical, age, and family as set forth in § 1B1.13 cmt. n.1 (A)-(C).

*First Step Act and the Outdated Sentencing Commission Guidance*

The First Step Act (Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act) ("FSA") was a bipartisan criminal justice bill signed into law in 2018.  Pub. L. No. 115-391.  The FSA had many components, but relevant to this inquiry are amendments to the compassionate release statute (18 U.S.C. § 3582) to increase the use and transparency of compassionate release.  Toward that end, the statute now allows inmates seeking early release to file motions directly with the court.  *See* 18 U.S.C. § 3582(c)(1)(A).  Before the FSA, only the Bureau of Prisons could file such a motion.

Because of the FSA, the Director of the Bureau of Prisons and the courts now have concurrent authority to determine compassionate releases.  This change significantly altered the compassionate release regime, requiring the Sentencing Commission to alter its policy statement section 1B1.13 and applicable Application Notes.  But the Sentencing Commission has not made any updates since the passage of the FSA, leaving the introductory phrase of policy statement section 1B1.13 ("Upon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A). . ."),

commentary Note 4 ("A reduction under this policy statement may be granted only

upon motion by the Director of the Bureau of Prisons"), and the introductory phrase

to commentary Note 1(D) ("as determined by the Director of the Bureau of Prisons,

there exists in the defendant's case an extraordinary and compelling reason. . .")

inconsistent with the FSA.[5]  *See* 18 U.S.C. § 3582(c)(1)(A), U.S.S.G. §1B1.13.

Because the Sentencing Commission's policy statement section 1B1.13 and

Application Notes are now incompatible with the statute itself, the Court need not

follow the outdated portion of this commentary that is contradictory to federal law.

*See Stinson v. United States*, 508 U.S. 36, 38 (1993) ("[C]ommentary in the

Guidelines Manual that interprets or explains a guideline is authoritative unless it

violates the Constitution or a federal statute, or is inconsistent with, or a plainly

erroneous reading of, that guideline.").   Without update by the Sentencing

Commission, the only logical way to read and interpret the introductory phrase of

policy statement section 1B1.13 is that the requirement that "Upon motion of the

Director of the Bureau of Prisons" no longer applies given the FSA and should instead

be read as "Upon motion of the Director of the Bureau of Prisons *or Defendant.*"

Likewise, commentary Note 4 should be read to note that "[a] reduction under this

policy statement may be granted only upon motion by the Director of the Bureau of

Prisons *or Defendant.*"  And the introductory phrase to commentary Note 1(D) ("as

---

[5] The Sentencing Commission has been unable to update its policy statement or commentary since passage of the FSA because it has lacked a quorum with only two voting members of seven (and four needed for a quorum). *See United States v. Adeyemi*, No. CR 06-124, 2020 WL 3642478, at *7 (E.D. Pa. July 6, 2020).

determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason . . .") should be read to allow courts to determine whether extraordinary and compelling reasons exist without the need for a prior determination by the Director of the Bureau of Prisons.

This reading is in line with Congress's intent in passing the FSA. Considering the FSA provision entitled "Increasing the Use and Transparency of Compassionate Release," the Court is hard pressed to find a clearer indication of Congress's intent to expand the court's implementation of compassionate release. FSA of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239. A Congressional Research Service report characterizes the FSA as the culmination of years of effort in Congress to confront the problem of a large federal prison population. Cong. Research Serv., R45558, *The FSA of 2018: An Overview* 1 (2019). Along with changes to compassionate release, the FSA reduces or does away with mandatory minimums for various offenses, expands the use of the safety valve provision, eliminates "stacking" for firearm offenses, and greatly expands the opportunity for inmates to earn good time credit. *Id.* Thus, the considerable effort expended by Congress in crafting the FSA, and the ultimate text in the statute itself, support the notion that Congress intended to empower district courts with the authority and flexibility to address motions for compassionate release with an eye toward increasing their use. *See United States v. Marks*, No. 03-CR-6033L, 2020 WL 1908911, at *5 (W.D.N.Y. Apr. 20, 2020) ("It seems likely that the BOP's parsimony in that regard was one reason for Congress's decision to allow prisoners to file motions directly.")

It is also worth noting that in finding that it may independently determine whether extraordinary and compelling reasons exist warranting a reduction in a defendant's sentence, the Court joins the majority of other district courts that have considered this issue. *See, e.g., United States v. Adeyemi*, No. CR 06-124, 2020 WL 3642478, at *15-16 (E.D. Pa. July 6, 2020); *United States v. Young*, No. 2:00-CR-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020) ("[A] majority of the district courts that have considered the issue have likewise held, based on the FSA, that they have the authority to reduce a prisoner's sentence upon the court's independent finding of extraordinary or compelling reasons.")

## III.   APPLICATION OF STATUTE IN THIS CASE

### A. *Existence of Extraordinary and Compelling Circumstances*

After finding that the Court has the authority to determine whether extraordinary and compelling reasons call for compassionate release, the next task is to determine whether such reasons exist for Mr. Vigneau. To support a finding of extraordinary and compelling reasons to reduce his sentence, Mr. Vigneau argues that his CCE conviction is "unusual and unique" in this District, the legal landscape for marijuana has changed, and that his health is at risk due to the COVID-19 pandemic. ECF No. 321 at 7, 9-10. He argues that these factors, individually and collectively, are sufficient for this Court to grant compassionate release. *Id.*

Putting aside his health concerns regarding COVID-19, Mr. Vigneau argues, in essence, that he is serving an unusually long sentence for the crimes he committed

8

as he summarizes his sentence as a "a 30-year sentence for a non-violent, no-gun, marijuana offense." *Id.* at 7. For the reasons discussed below, the Court agrees.

### 1. *Unusually Long Sentence*

The Senate Report from when Congress passed the Comprehensive Crime Control Act of 1984 shows that Congress wanted the courts to be able to reduce "unusually long sentences," and to reduce sentences where amended Guidelines suggest a shorter sentence. S. Rep. No. 98-225, at 55-56 (1983). It indicated that sentence modifications would be appropriate when "extraordinary and compelling circumstances justify *a reduction of an unusually long sentence*, and some cases in which the Sentencing Guidelines for the offense of which the defendant was convicted have been later amended to provide a shorter term of imprisonment." *Id.* (emphasis added). Thus, the act was to serve as "'safety valves' for modification of sentences," enabling judges to provide second looks for sentence reductions when justified by various factors that previously could have been addressed through the abolished parole system. *Id.* at 121. Congress looked to "assure the availability of specific review and reduction of a term of imprisonment for 'extraordinary and compelling reasons' and to respond to changes in the Guidelines." *Id.* Noting that this approach would keep "the sentencing power in the judiciary where it belongs," rather than with a federal parole board, the statute permitted "later review of sentences in particularly compelling situations." *Id.*

Courts in other districts have determined that unusually long sentences by today's standards could support an "extraordinary and compelling" reason to reduce

a sentence. *See, e.g., United States v. Urkevich*, No. 8:03CR37, 2019 WL 6037391, at

*2, 4 (D. Neb. Nov. 14, 2019); *United States v. Cantu-Rivera*, Cr. No. H-89-204, 2019

WL 2578272, at *2 (S.D. Tex. June 24, 2019); *United States v. Brown*, 411 F. Supp.

3d 446, 452 (S.D. Iowa 2019), *amended on reconsideration,* No. 4:05-CR-00227-1,

2020 WL 2091802 (S.D. Iowa Apr. 29, 2020).  For example, the court in *Brown*

strongly implied that changes to how long sentences are calculated could be an

extraordinary and compelling reason to reduce a sentence.  411 F. Supp. 3d at 52.[6]

In *Cantu-Rivera*, the court also took the length of the sentence into account when it

provided relief:

> [T]the Court recognizes as a factor in this combination the fundamental
> change to sentencing policy carried out in the First Step Act's
> elimination of life imprisonment as a mandatory sentence solely by
> reason of a defendant's prior convictions . . . .  The combination of all of
> these factors establishes the extraordinary and compelling reasons
> justifying the reduction in sentence in this case.

2019 WL 2578272, at *2.  And the court in *Urkevich* modified a sentence based largely

on the FSA's changes to 18 U.S.C. § 924(c)(1)(C) sentencing.

> The Government acknowledges that [the defendant's] three firearms
> counts would have carried mandatory terms of 60 months each (180
> months), and not 300 months for Counts III and V (660 months total) if
> he had been sentenced after the effective date of the [FSA].  Accordingly,
> the sentence he is serving (848 months) is forty years longer than the
> sentence he likely would have received (368 months) if he were
> sentenced under the law (18 U.S.C. § 924(c)(1)(C)) as it now exists.
> ...

---

[6] The court denied relief in *Brown* because the court concluded the defendant
ought to serve more of his original sentence before considering release. *See* 411 F.
Supp. 3d at 452-53 ("Regardless, because Defendant would still be in prison under
modern law, any sentencing disparity created by § 924(c) stacking does not, at least
yet, provide an 'extraordinary and compelling reason' for compassionate release.").

> A reduction in his sentence is warranted by extraordinary and compelling reasons, specifically the injustice of facing a term of incarceration forty years longer than Congress now deems warranted for the crimes committed.

2019 WL 6037391, at *2, 4; *see also United States v. Arey*, No. 5:05-cr-29, 2020 WL 2464796, at *6 (W.D. Va., May 13, 2020); *United States v. Maumau*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *6–7 (D. Utah Feb. 18, 2020) ("Like the *Urkevich* court, this court concludes that the changes in how . . . sentences are calculated is a compelling and extraordinary reason to provide relief on the facts present here.").

The national average sentence for marijuana trafficking offenders in 2017 was twenty-seven months. U.S. Sentencing Comm'n, *2017 Datafiles (Quick Facts)*, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Marijuana_FY17.pdf. Eighty-six percent of offenders received less than five years imprisonment. *Id.* Only 3.3% of all offenders received 120 months or more. *Id.* The average sentence for marijuana trafficking in 2018 was twenty-nine months (with a median sentence of eighteen months). U.S. Sentencing Comm'n, *FY 2018 Overview of Federal Criminal Cases* 15 (2019). Mr. Vigneau, however, received 365 months. To expand the frame further, one district court, in assessing a motion for compassionate release, noted the median lengths of sentences imposed in 2019 for a selection of especially heinous crimes: twenty years for murder, fifteen years for sexual abuse, and ten years for kidnapping. *United States v. Quinn*, No. 91-CR-00608-DLJ1-RS, 2020 WL 3275736, at *3 (N.D. Cal. June 17, 2020) (citing U.S. Sentencing Comm'n, *2019 Annual Report and Sourcebook of Federal Sentencing*

*Statistics* 64 (2020), available at https://www.ussc.gov/research/sourcebook-2019)).

Considering this data, the Court has no doubt that Mr. Vigneau received an "unusually long sentence" for a crime involving marijuana trafficking and money laundering. S. Rep. No. 98-225, at 55-56.

### 2. *Changing Guidelines*

The Court sentenced Mr. Vigneau in 1998 to 365 months–within the Sentencing Guidelines range–at a time when the Sentencing Guidelines were mandatory. In 2005, the United States Supreme Court ruled that district courts are empowered, at their discretion, to consider how a defendant's circumstances may call for imposing a sentence either above or below the guideline range. *United States v. Booker*, 543 U.S. 220, 264-65 (2005). In other words, following *Booker,* the ranges in the Sentencing Guidelines are no longer mandatory so long as a sentence follows statutory requirements. *Id.* The Court in sentencing Mr. Vigneau was not allowed to consider a sentence outside the range. Thus, it is now proper for the Court to consider the fact that the Guidelines have changed–from mandatory to discretionary–in determining whether to grant compassionate release. S. Rep. No. 98-225, at 121 ("specific review and reduction of a term of imprisonment for 'extraordinary and compelling reasons' and to respond to changes in the guidelines.")

The only statutory constraint on a court sentencing Mr. Vigneau today would be the twenty-year mandatory minimum sentence for a continuing criminal enterprise. 21 U.S.C. § 848. Thus, Mr. Vigneau would likely not face the same sentence he received in 1998.

3.   *Marijuana*

Eleven states have legalized the recreational use of marijuana, and thirty-three states have legalized marijuana for medical use.   Deborah M. Ahrens, *Retroactive Legality: Marijuana Convictions and Restorative Justice in an Era of Criminal Justice Reform*, 110 J. Crim. L. & Criminology 379, 393-397 (2020). "Twenty-three years ago, marijuana was formally illicit for all purposes in all states and under federal law; . . . the legal landscape for marijuana has changed rapidly and reflects broader trends in criminal law reform. A minority of states have legalized recreational marijuana, but it is likely, given high public support for legalization, that more jurisdictions will follow soon." *Id.* at 393.

Federal law continues to make the possession and distribution of marijuana a crime.[7]   While the Court must apply the current federal law with respect to marijuana, it can note the changing legal landscape since Mr. Vigneau was sentenced in 1998. It is clear to the Court that if it sentenced Mr. Vigneau today, it would not have given him a sentence of thirty years for a crime involving selling and distributing marijuana. The disparity between then and now is a factor in finding extraordinary and compelling reasons to grant Mr. Vigneau relief.

---

[7] Under the Controlled Substances Act (CSA), marijuana is a Schedule I controlled substance. A Schedule I drug is defined as one with "a high potential for abuse" and no accepted medical use, and that is unsafe to use even under medical supervision. *See* 21 U.S.C. § 812(b)(1).

### 4. Continuing Criminal Enterprise

Finally, it also appears unusual that Mr. Vigneau was charged with a continuing criminal enterprise.  According to Mr. Vigneau's research, and not challenged by the government, no one has been charged with a continuing criminal enterprise in this District in over twenty years.  ECF No. 321 at 7.  The facts in the presentence report would most likely support a drug offense charge that would have had a Sentencing Guideline range much lower than the Guidelines applied in Mr. Vigneau's sentencing in 1998 and without the twenty-year mandatory minimum for the CCE conviction.

Reviewing all the information in front of the Court, the Court finds that the factors recounted above represent extraordinary and compelling circumstances supporting the need to reduce Mr. Vigneau's sentence.[8]  At bottom, it is hard to reconcile Mr. Vigneau's thirty-year sentence with modern sentencing regimes and statistics, and especially with an ever-increasing body of research that questions the effectiveness of imprisoning convicted defendants for a period greater than reasonably necessary.  *See generally* Marc Mauer, *Long-Term Sentences: Time to Reconsider the Scale of Punishment*, 87 UMKC L. Rev. 114 (2018) (collecting governmental and non-governmental works and studies on the minimal effect of long federal prison sentences on deterrence, especially for drug-related crimes).

---

[8] Mr. Vigneau also cites an outbreak of COVID-19 in his prison.  ECF No. 321 at 9-10.  He cites no condition that puts him at an increased risk of contracting the virus, or of serious health consequences if he were to contract the virus, and therefore the Court does not consider COVID-19 as an extraordinary and compelling reason warranting his release.

## B. The § 3553(A) Factors Warrant a Reduction

After finding extraordinary and compelling reasons in support of a compassionate release request, the Court must then evaluate Mr. Vigneau's sentence under the § 3553(a) factors to determine what sentence would be "sufficient, but not greater than necessary." *See* 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a).

First, the Court considers the need for the sentence to, among other things, "reflect the seriousness of the offense." 18 U.S.C. § 3553(a)(2)(A). While engaging in a continuing criminal enterprise and money laundering are serious offenses, as this Court addressed above, attitudes toward marijuana, and the legalization of its use in some states, have dramatically changed since 1998. The average sentence for marijuana trafficking in 2018 was twenty-nine months (with a median sentence of eighteen months) and federal marijuana cases have declined by almost two-thirds (64.5%) in the past ten years. U.S. Sentencing Comm'n, *FY 2018 Overview of Federal Criminal Cases* 14-15 (2019) (citing U.S. Sentencing Comm'n, *2018 Sourcebook of Federal Sentencing Statistics* 29 (2019), available at https://www.ussc.gov/research/sourcebook-2018)).

The Court also reviews the history and characteristics of Mr. Vigneau. *See* 18 U.S.C. § 3553(a)(1). He is now fifty-five years old, having committed the crime when he was thirty-two years old. The likelihood of someone that age recidivating is low. He had only one prior felony conviction—for drug possession—even though his criminal history was more extensive. ECF No. 328-1 at 7-14. Mr. Vigneau's crime was a non-

violent crime.  Before this sentence of 365 months, it appears Mr. Vigneau had done little or no jail time.  *Id.*

This Court also reviews how Mr. Vigneau's sentence compares to that of his co-defendants and other persons involved in the enterprise.  *Id.* at 2-3.  Of his co-defendants who exercised their right to a jury trial, the most severely sentenced was his brother, Mark Vigneau, who received ninety-seven months imprisonment.  *United States v. Mark Vigneau*, 1:CR97-00033-002, ECF No. 185 (D.R.I.).  The sixth factor in § 3553(a) tasks this Court with "avoid[ing] unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  After comparing the sentences imposed in two separate but related cases, Mr. Vigneau's sentence strikes this Court as inconsistent with other sentences for similar or worse crimes.  The Court sentenced Richard Crandall, Mr. Vigneau's partner in the enterprise, to 188 months imprisonment, though Mr. Crandall both pleaded guilty and aided the government's investigation of other crimes.  *United States v. Crandall*, 1:CR97-00066-01L, ECF No. 21 (D.R.I.).  The Court found Robert Vigeant guilty of being a felon in possession of a firearm and ammunition and sentenced him to 235 months custody and five years of supervised release.  *United States v. Vigeant*, 1:CR97-00042-01ML, ECF No. 51 (D.R.I.).  Of all the persons involved in Mr. Vigneau's enterprise, his sentence exceeds the next highest sentence by ten years.  And Mr. Vigneau is the only person in the enterprise who is still imprisoned.

In totality, this Court believes that, after spending more than twenty-three years behind bars, the § 3553(a) factors weigh in favor of Mr. Vigneau's compassionate release.

### C. Mr. Vigneau Will Not Be a Danger to the Community

Finally, in considering Mr. Vigneau's motion for release, this Court can grant a sentence reduction only if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Mr. Vigneau does not have a perfect record at FCI Danbury, with infractions for fighting in 2004 and 2015, and one infraction for practicing boxing in 2003. ECF No. 325-3. In reviewing motions for compassionate release from other defendants, however, the Court notes that other courts have not held such disciplinary records to foreclose relief. *See, e.g., United States v. Marks*, 03-CR-6033L, 2020 WL 1908911, at \*8 (W.D.N.Y. Apr. 20, 2020) (granting compassionate release for defendant with a checkered disciplinary record over a long-term of imprisonment). The Court is satisfied that conditions of supervised release will mitigate any risk that is presented by Mr. Vigneau's release. *United States v. Johns*, No. CR 91-392-TUC-CKJ, 2019 WL 2646663, at \*3 (D. Ariz. June 27, 2019) (citing 18 U.S.C. 3142(g)). The Court also could revoke Mr. Vigneau's supervised release should he not meet those conditions and is prepared to do so if the need arises. *See* 18 U.S.C. § 3583(e); *Johnson v. United States*, 529 U.S. 694, 697 (2000).

## IV.   CONCLUSION

To review, the Court finds that Mr. Vigneau's Motion for Compassionate Release is ripe for the Court's review, that extraordinary and compelling circumstances exist to reduce his sentence, that the § 3553(a) factors warrant a reduction, and that Mr. Vigneau will not be a danger to society upon release.

The Court therefore:

1. GRANTS Patrick Vigneau's Motions for Compassionate Release (ECF Nos. 318, 321, and 323);

2. REDUCES Mr. Vigneau's sentence to time served plus twenty-one days[9] from the date of this Order; and

3. ORDERS the Bureau of Prisons, following the twenty-one-day period, to release Mr. Vigneau to begin to serve his five-year term of supervised release as originally imposed, but modified so that he must serve the first three months at a Residential Reentry Center, preferably Houston House in Pawtucket, R.I., and then three months on home detention with radio frequency ("RF") monitoring, where Mr. Vigneau will be restricted to his residence every day with these exceptions: employment, education, religious services, medical treatment, substance abuse or mental health treatment, attorney visits, court appearances, court-ordered obligations or

---

[9] Consistent with advice from the Centers for Disease Control and Prevention and Bureau of Prison policy, the Bureau of Prison would like Mr. Vigneau to quarantine in its custody for twenty-one days and have two negative COVID-19 tests before going to the Residential Reentry Center ("RRC"). This is for the protection of Mr. Vigneau and the residents of the RRC because of the COVID-19 pandemic.

other activities as pre-approved by the Probation Office.  Additionally, Mr.

Vigneau must take part in a program of substance abuse testing (up to

seventy-two drug tests per year) as directed and approved by the Probation

Office.

IT IS SO ORDERED.

John J. McConnell, Jr.
Chief Judge
United States District Court

July 21, 2020